# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EDWARD WASHINGTON**                                        **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL**                                        **NO. 08-769-A-M2**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, April 22, 2010.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EDWARD WASHINGTON**                                   **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL**                                          **NO. 08-769-A-M2**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by petitioner, Edward Washington ("Washington").  The State has filed an opposition to Washington's habeas petition (R. Doc. 22).

## PROCEDURAL BACKGROUND

Washington was indicted in the 19th Judicial District, Parish of East Baton Rouge, State of Louisiana, of four (4) counts of first degree murder in violation of La. R.S. 14:30.  Through counsel, he waived formal arraignment and pled not guilty to the charges against him.  Following a jury trial conducted in July 2003, Washington was found guilty as charged; however, the jury was unable to reach a unanimous verdict during the penalty phase concerning the prosecution's request for the death penalty.  A mistrial was therefore declared during the penalty phase, and Washington was subsequently sentenced to mandatory life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on each of the four convictions, with such sentences to be served consecutively.

Washington appealed his convictions and sentences to the Louisiana First Circuit Court of Appeals, asserting that:  (1) his right to confrontation was violated by the admission into evidence at trial of a statement made by a child witness to an EMS paramedic who arrived at the scene of the crime; (2) that a mistrial should have been granted based upon statements made by the prosecution during opening arguments regarding evidence that was ultimately deemed inadmissible at trial; and (3) that the trial court erred in refusing to suppress evidence obtained as a result of an unconstitutional search of his residence conducted with the consent of the petitioner's girlfriend.  The First Circuit denied Washington's appeal and affirmed his convictions and sentences on February 11, 2005.  Washington then sought writs to the Louisiana Supreme Court, which were also denied on December 16, 2005.

On or about September 11, 2006, Washington filed a post-conviction relief application with the state trial court, asserting that he was provided with ineffective assistance of counsel at trial because his counsel failed to investigate a purported shoe print found on one of the victim's clothing at the scene of the crime and failed to interview and secure the testimony of an alibi witness.  That application was denied on May 10, 2007.  The petitioner then sought supervisory review before the Louisiana First Circuit Court of Appeals and the Louisiana Supreme Court, which applications were denied without comment on November 28, 2007 and November 10, 2008, respectively.

On or about November 20, 2008, the petitioner filed the present habeas petition asserting the claims that had been presented on appeal and in his post-conviction relief proceedings.  The State concedes that Washington has exhausted his state court remedies with regard to the claims asserted in his petition.  The State further asserts, however, that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that the petitioner's claims must be rejected.

## FACTUAL BACKGROUND

The evidence adduced at trial reflects that the petitioner went to the residence of his estranged wife, Keisha Washington, on April 4, 2000, while armed with an AK-47 Assault Rifle.  Upon entering the home, the petitioner killed everyone present, with the exception of his son, Edward T. Washington, Jr., who was 2½ years old at the time.  The four (4) people killed were Keisha Washington; petitioner's sister-in-law, Kedra Washington;  his five-year old nephew, Nicholas Washington; and a family friend, Eddie Johnson, III.  Emergency medical personnel arrived at the residence in response to a 911 telephone call made by Keisha Washington's co-worker, who was concerned when she did not report to work as scheduled.  The only person alive in the residence upon their arrival was petitioner's son.

Although the assault rifle was never recovered, a subsequent search of the petitioner's residence uncovered ammunition that matched that found at the murder scene in both type and caliber.  In addition, a state police crime lab expert testified

3

that ammunition found at the petitioner's home had previously been loaded into the exact same murder weapon because of "feed marks" found on the shell casings that matched "feed marks" on shell casings found at the murder scene.  Those "feed marks" had been caused when the ammunition was loaded into the murder weapon and subsequently removed.  The petitioner's girlfriend testified that, whereas she had never seen the petitioner with an assault rifle, she had seen him with a clip of ammunition.[1]   A police investigation led to Washington's arrest, and he was subsequently indicted, tried, and convicted of the four murders, as discussed above.

## LAW & ANALYSIS

In order for this Court to grant an application for a writ of habeas corpus as to any claim which has been previously adjudicated on the merits in state court, the Court must find that adjudication of such claim:  (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) and (d)(2).  Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case

---

[1] The evidence also indicated that Washington suffered a gunshot wound to his left foot the night of the shootings, and that, in order to receive medical treatment for that injury, Washington and his girlfriend told medical providers that he was robbed at gunpoint and shot in the foot.

4

differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. *See* 28 U.S.C. § 2254(d)(1)-(2); *Montoya v. Johnson*, 226 F.3d 399 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. *Montoya*, *supra*, 226 F.3d at 404. *See also, Williams v. Taylor*, *supra*, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). Finally, determinations of factual issues made by state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir. 1994).

**I.    Claim No. 1 - Confrontation Clause violation:**

In his first claim, Washington contends that his right to confront his accusers was violated when the state court admitted into evidence a hearsay statement made by his son, Edward Washington Jr., to an EMS worker who responded to an

emergency call after the murders occurred.[2]  Washington asserts that such out-of-court statement should not have been admitted because his son had been found incompetent to testify at trial.  In asserting this argument on appeal, Washington relied upon the U.S. Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which held that out-of-court statements by witnesses that are "testimonial" in nature are barred under the Confrontation Clause unless the witnesses are unavailable and the defendants had a prior opportunity to cross-examine the witnesses.  The Louisiana First Circuit Court of Appeals concluded, on appeal, that the statement at issue in this case clearly fell within the "excited utterance" exception to the hearsay rule and that it was "plainly not testimonial in nature" since it was made in response to a single question by an emergency paramedic seeking to find out what had happened and render treatment.

The undersigned does not find that the First Circuit's decision is contrary to or an unreasonable application of *Crawford.*  In *Crawford*, the U.S. Supreme Court noted that the Confrontation Clause applies to witnesses who "bear testimony," and it explained that  "testimony" is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Crawford*, at 1364.  For

---

[2] Specifically, at trial, over the defendant's hearsay objection, the trial court allowed EMS paramedic, Rintha Batson ("Batson"), to testify regarding a statement that Edward Washington, Jr. made to her after the paramedics discovered the bodies of the four victims in and around the house upon arrival. According to Batson, she immediately removed the child from the house, attempted to comfort him, and asked him what had happened.  In response, the child said, "My daddy made my momma fall."  Following a hearing outside the presence of the jury, the state trial court admitted that statement pursuant to the "excited utterance" exception to the hearsay rule.

example, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* The Supreme Court listed various formulations of the core class of "testimonial" statements as including "*ex parte* in-court testimony or its functional equivalent- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions;" "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial;" "*ex parte* testimony at a preliminary hearing;" and statements taken by police officers in the course of interrogations. *Id.*

This Court concurs with the First Circuit's conclusion that the statement of petitioner's son was an "excited utterance" made while he was still under the stress and trauma of the events that had taken place[3] and that such statements were not

---

[3] Louisiana Code of Evidence article 803(2) defines an "excited utterance" as a "statement relating to a startling event or condition" that "was made while the declarant was under the stress of excitement caused by the event or condition." The fact that the statement is made in response to an inquiry does not automatically defeat it as an exception to the hearsay rule as long as the statement is spontaneous and made without deliberate reflection. *State v. Yochim*, 496 So.2d 596, 599-600 (La. App. 1 Cir. 1986) The undersigned agrees with the First Circuit's conclusion that, although several hours had elapsed between the murders and the statement made by petitioner's son, the statement was still made while the child was under the stress of the traumatic event, given that he was only 2 ½ years old (and therefore not capable of the deliberate reflection/fabrication of an adult or older child), had witnessed the murders of three family members and a family friend, had been alone in the home with those victims (which included his own mother) for hours before EMS workers found and tended to him, and was described by the EMS paramedic as still being in a frightened and agitated state. Furthermore, this Court agrees with the numerous courts that have held that, even though a child may be incompetent to testify as a witness at trial, testimony concerning his or her "spontaneous declarations or *res gestae* statements is nevertheless

made for the purpose of establishing or proving any fact, such that they could be considered "testimonial" for purposes of *Crawford*.   Based upon the EMS paramedic's testimony (discussed in Footnote 2), it appears that such statement was made in the immediate course of events after paramedics arrived at the scene and were attempting to figure out what had happened and what services they could provide, if any.[4]

In his present habeas petition, Washington relies upon another case that was not considered by the First Circuit in support of his Confrontation Clause claim.  That case is *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).  In *Davis*, the U.S. Supreme Court was faced with the issue of whether, when objectively considered, an interrogation that took place during a 911 domestic abuse call produced "testimonial" statements.  The Supreme Court held that statements made by the domestic abuse victim to a 911 operator's questions while the defendant was allegedly inside the victim's home in violation of a no-contact order were not admitted in violation of the Confrontation Clause (*i.e.*, were

---

admissible."  *Morgan v. Foretich*, 846 F.2d 941 (4th Cir. 1988); Annotation, *Admissibility of Testimony Regarding Spontaneous Declarations Made by One Incompetent to Testify at Trial*, 15 A.L.R. 4th 1043 (1982)(citing cases)("[T]he preponderance of authority is to the effect that admissibility of excited utterances is not affected by the declarant's incompetence due to infancy or other legal unavailability because the nature of the utterance is such that it obviates the usual sources of untrustworthiness in children's testimony"); *United States v. Nick*, 604 F.2d 1199, 1202 (9th Cir. 1979)(Three year old "could not have been subjected to cross-examination even if he had been called as a witness by reason of his tender years," yet his statements were admissible under the spontaneous declaration exception); *Jones v. United States*, 231 F.2d 244 (D.C. Cir. 1956)(Five year old was incompetent to testify as a witness but statements to her mother were admissible as spontaneous declarations); 81 Am.Jur.2d Witnesses §201 (2009), n. 10 (citing cases).

[4] Since Edward Washington, Jr. was the only individual alive at the time the paramedics arrived, it is logical that they would attempt to comfort him and try to find out what had happened and how they could help him.

"nontestimonial") since the victim was speaking about events as they were actually happening, rather than describing past events, and since the primary purpose of the 911 operator's interrogation was to enable police assistance to meet an ongoing emergency caused by a physical threat to the victim.  *Id.*, at 826-27.  The Supreme Court noted, in contrast, that statements are considered to be "testimonial" when the circumstances "objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Id.*, at 822.

Even considering the Supreme Court's holding in *Davis*, the undersigned still finds that the First Circuit did not incorrectly or unreasonably apply federal law in concluding that the child's statement to the EMS paramedic in this case was not "testimonial."  Even though the child's statement was not made while the murders were happening, it was made soon enough thereafter and while the child was still enduring the emotional trauma  and fright associated with the event that it could be considered as a description of a present event, rather than a past one.  Moreover, it appears that the primary purpose of the EMS paramedic's question and the child's statement was to enable EMS personnel to meet an ongoing emergency and not to interrogate the child for purposes of establishing or proving past events that might be relevant to a later criminal prosecution.  After all, EMS personnel are not law enforcement officials who would be responsible for interrogating witnesses and investigating a possible crime for future prosecution.  As such, the trial court's admission of the child's statement did not violate petitioner's Confrontation Clause

rights under *Crawford* or *Davis*, and such claim should therefore be dismissed for lack of merit.

## II.   Claim No. 2 - Denial of Motion for Mistrial:

In this claim, Washington asserts that his due process right to a fair trial was violated when the trial court denied his motion for a mistrial based upon the prosecutor's reference in his opening statements to evidence that was later deemed to be inadmissible.[5]  The state courts dismissed this claim because Washington failed to contemporaneously object to the statement during opening arguments. They found that the defendant's objection, urged at the conclusion of the presentation of evidence, was untimely.  The First Circuit also found that petitioner did not properly preserve the claim for appellate review since he had not contemporaneously objected.  Thus, the state courts expressly relied upon a state procedural ground, *i.e.*, the contemporaneous objection rule, in dismissing this claim.

The U.S. Fifth Circuit Court of Appeals has recognized that, where an appellate court refuses to consider a claim on the merits because of a defendant's failure to preserve the error at trial, federal habeas review of that claim is procedurally barred unless the defendant "can first demonstrate either 'cause' and actual 'prejudice,'" or that a fundamental miscarriage of justice will occur if the claims are not considered.   The Fifth Circuit has also recognized that the

---

[5] Specifically, petitioner contends that, during opening arguments, the prosecutor improperly referred to a statement petitioner allegedly made to another individual prior to the murders in question, wherein petitioner stated that he would kill everyone in Keisha Washington's house, including four-year-old Nicholas.

contemporaneous-objection rule is an independent and adequate state procedural ground for rejecting a habeas claim.  *See, Bowie v. Cain*, 2002 WL 432675 (5th Cir. (La.) 2002)("The last reasoned state court judgment addressing [the petitioner's] claim held that it was barred by his failure to object contemporaneously to the jury instruction at trial.  When a state court has denied a petitioner's claim on an independent and adequate state-law ground, federal habeas review is barred unless the petitioner shows cause for the default and actual prejudice from the alleged violation of federal law, or demonstrates that a fundamental miscarriage of justice will occur if the claims are not considered.  The independence of the contemporaneous-objection rule as applied here is not in doubt.  Neither is that rule constitutionally inadequate").[6]

Since Washington has not set forth any cause for his failure to follow the state's procedural contemporaneous objection rule and has not demonstrated that actual prejudice resulted from the trial court's failure to grant a mistrial (nor has he demonstrated that a fundamental miscarriage of justice will occur if this claim is not considered herein), the undersigned is precluded from reviewing the merits of this claim, and it should be dismissed as procedurally barred.[7]

---

[6] *See also, Varga v. Quarterman*, 2009 WL 980263 (5th Cir. 2009)(Citations omitted)("It is well established that a habeas petitioner's federal claim is defaulted when the last state court to consider it denied relief based on an adequate and independent state law ground.  We have held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground"); *Anderson v. Quarterman*, 2006 WL 3147544 (5th Cir. 2006), citing *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1991)(same).

[7] Furthermore, to the extent that the First Circuit's commentary on pages 12-13 of its opinion could be considered an evaluation of the merits of petitioner's second claim, petitioner has not argued that the First Circuit's conclusions are contrary to or an unreasonable application of any specific federal statute or jurisprudence.  Moreover, Washington did not even allege in state court that the denial of his motion for

**III.     Claim No. 3 - Denial of Motion to Suppress:**

In this claim, Washington contends that his due process rights were violated because the trial court denied his motion to suppress and admitted evidence that was seized as a result of a search of his home pursuant to consent granted by his girlfriend, Laronda Vallian ("Vallian").  Washington claims Vallian lacked authority to grant consent to the search of his home and that the search was the result of misconduct by the police. Even though Washington does not specifically cite to the Fourth Amendment, this claim appears to be based upon that amendment and is therefore precluded by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 307, 49 L.Ed.2d 1067 (1976).  In *Stone*, the U.S. Supreme Court held that, where state courts have provided the opportunity for full and fair litigation of a Fourth Amendment claim,[8] a state prisoner cannot be granted habeas corpus relief on grounds that evidence obtained through an unconstitutional search and seizure was introduced at his trial. *Id.,* at 490.  The Fifth Circuit has also held that, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims

---

mistrial raised a federal constitutional claim (he simply asserted state law issues), and as a result, the state courts did not have the first opportunity to consider any federal constitutional questions relating to his Claim No. 2, as is required for proper exhaustion prior to habeas review.  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 439 (1971)(It is insufficient that a federal habeas applicant has brought claims through the state court system; instead, the state courts must have had the "first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding"); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)(Procedural-default rule bars federal habeas corpus review unless a state court reaches the merits of a federal claim); *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001)("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.  Moreover, to hold that vague references to such expansive concepts as due process and fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion requirement").  Finally, Washington cannot now return to state court and litigate any federal issues relating to this claim because such claim would be considered time-barred and successive.

[8] The Fourth Amendment assures the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," *Stone* forecloses habeas review. *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006), quoting *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).[9]  Washington has not even argued, much less established, that the state courts denied him a full and fair opportunity to litigate this search and seizure claim by demonstrating that the processes employed by the state were routinely or systematically applied so as to prevent the actual litigation of his fourth amendment claim on the merits.  In fact, to the contrary, it appears that the district court conducted a thorough pre-trial hearing on his motion to suppress and that the First Circuit considered the matter under its supervisory jurisdiction.  Then, Washington raised the issue again before the First Circuit and the Louisiana Supreme Court on direct appeal.  *See, Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes").  Washington is not entitled to any further review of his Fourth Amendment claim in this Court, and it should therefore be dismissed.

---

[9] Furthermore, alleged errors that a state court may have committed in adjudicating a motion to suppress or an appeal relating thereto are not exceptions to *Stone*'s bar.  *Id.*, citing *Janecka v. Cockrell*, 301 F.3d 316, 321 (5th Cir. 2002); *Christian v. McKaskle*, 731 F.2d 1196 (5th Cir. 1984); *Williams*, at 220.

**IV.     Claim No. 4 - Ineffective Assistance of Counsel:**

In his final claim, Washington contends that his trial counsel was ineffective in failing to retain an expert to investigate a purported shoe print found on an item of one of the victim's clothing and in failing to interview and secure the testimony of an alibi witness, Reggie Brown (petitioner's next-door neighbor).  A habeas petitioner seeking to prove ineffective assistance of counsel must meet the two-pronged burden of proof set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The petitioner must affirmatively demonstrate:

> (1)     that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and
>
> (2)     that the deficient performance "prejudiced" his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.    *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir.

14

1988).  The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin*, 796 F.2d at 817.  Great deference is given to counsel's exercise of his professional judgment.  *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816.  When it is apparent that the alleged incompetent acts of the attorney were in fact conscious strategic or tactical trial decisions, review of the acts must be "highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2587 91 L.Ed.2d 305 (1986).  Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment.  *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must also affirmatively demonstrate prejudice from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland*, 104 S. Ct. at 2067.  To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 104 S.Ct. at 2068.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding.  *Id.*  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show

a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17.  A conscious and informed tactical decision cannot be the basis for constitutionally ineffective assistance of counsel unless it is "so ill-chosen that it permeates the entire trial with obvious unfairness."  *Garland v. Maggio*, 717 F. 2d 199, 206 (5th Cir. 1982).

As discussed above, the 19th Judicial District Court considered Washington's claim of ineffective assistance of counsel during his post-conviction relief proceedings.  Relative to his first claim that his counsel was ineffective for failing to obtain independent expert testing of an alleged shoe print on one of the victim's clothing, the Commissioner found Washington's argument to be too speculative and unsupported by evidence in the record to satisfy his two-pronged burden under the *Strickland* standard.  In his post-conviction relief application, Washington argued that, if the alleged foot print impression had been analyzed, it would have "revealed that the real murderer was not the defendant."  The Commissioner, however, found that Washington was presuming, contrary to evidence in the record, that the impression on the victim's clothing was, in fact, a shoe print, and assuming that it was, that a test would have shown that it did not come from his shoe, but from the actual murderer.  The Commissioner noted that the trial testimony of Kim Colomb ("Ms. Colomb"), a certified expert in shoe print analysis, concerning the impression in question indicated that the mark could not be identified from the picture.[10]

---

[10] Ms. Colomb's trial testimony that is at issue is the following:

> **Defense counsel:**  I want to show you a picture marked S-94.  I want to show you, this is a picture of one of the victims in bed.  What does that

16

Furthermore, the actual shirt upon which the impression was made was not seized or placed into evidence for actual comparison; thus, there was no showing by Washington that the shirt was even available for testing by his trial counsel (such that his trial counsel's conduct in failing to obtain such testing could be considered deficient) or that it existed at the time of his post-conviction proceedings so that it

---

look like to you on the blue nightgown? And I'll show you a blowup of it.

**Ms. Colomb:**  It's very hard to tell from these pictures.  It may be an impression of some sort, but I really –

**Defense counsel:**  Like a shoe impression?

**Ms. Colomb:**  It's hard to tell from the photograph.

* * *

**Defense counsel:**  Now, you looked at this picture.  Can you tell this is not a shoe print impression?

**Ms. Colomb:**  No.

**Defense counsel:**  It could be?

**Ms. Colomb:**  It could be.

**Defense counsel:**  Should have been looked at?

**Ms. Colomb:**  It could have been looked at.

**Defense counsel:**  Would it have been important to be looked at as a shoe print?

**Ms. Colomb:**  Possibly.

* * *

**Defense counsel:**  Is that a piece of evidence you wish you had looked at to further reach a conclusion in here?

**Ms. Colomb:**  I would have liked to have had it to see whether I could determine whether it was a shoe print or not.

*See*, Commissioner's Recommendation, p. 4, quoting Trial Transcript, pp. 1213, 1215.

could be tested.  The Commissioner therefore concluded that, even if the defendant could show deficient conduct, which he had not based upon the facts alleged, he could not demonstrate prejudice without at least showing that the shirt still existed for testing and that such testing would show the mark to be the shoe print of the murderer – and that it was not the defendant.  Finally, the Commissioner concluded that the weight of the evidence produced at trial (including ballistics evidence, the testimony of Otis Brown (who allegedly saw Washington leaving the area of the victim's home about the time of the murders), and the eyewitness statement of Washington's son that his father "made Mommy fall") would not have likely been undermined by the possibility of a shoe print on an item of clothing at the scene, and as such, there was no reasonable probability that, but for defense counsel's failure to have the questionable mark tested, the outcome of Washington's trial would have been different.

As to Washington's second claim of ineffective assistance of counsel (*i.e.*, that his counsel failed to interview and call Reggie Brown, an alleged alibi witness), the Commissioner found that such claim lacked merit because the record indicated that Washington's counsel called numerous witnesses to support his alibi defense at trial and because Washington had not provided crucial facts in support of his claim. Specifically, the Commissioner noted that no facts had been alleged by the defendant and no affidavit of the alleged alibi witness had been presented from

18

which the court could assume that the witness was available to testify, that his whereabouts were known, or that he would corroborate the unsupported allegations of fact made by the defendant as to his whereabouts on the night in question at the time the murders took place.  The Commissioner suggested that, if Washington could come forward with an affidavit from the alleged witness or his defense counsel supporting his claim that Reggie Brown was available to give him an alibi between 11 p.m. and midnight on the night in question, the court should allow such amendment/supplementation to be filed within the traversal time period and refer the matter back for further review and an evidentiary hearing.  Apparently, no such affidavit was filed by Washington, and the trial court ultimately denied his ineffective assistance of counsel claim for the reasons set forth in the Commissioner's recommendation.

In his present habeas petition, Washington has not asserted any new arguments concerning his ineffective assistance of counsel claims that are different from those

asserted in his post-conviction proceedings,[11] and he has failed to carry his burden

---

[11] Relative to his first ineffective assistance of counsel claim, Washington simply asserts, in a conclusory fashion, that his trial counsel was deficient because he did not request to have the item of clothing with the alleged shoe print on it tested to see if it could have identified the real perpetrator and that such examination would have excluded petitioner from being in the house at the time of the murders or after them.  Such assertion is completely speculative, as pointed out by the 19th Judicial District Court Commissioner, and does nothing to establish that the item of clothing in question was even seized after the murders and could have been subjected to testing if defense counsel had wanted to have it tested and that such testing would have revealed that someone other than petitioner was the perpetrator.  As such, Washington has again failed to demonstrate that his counsel was deficient in failing to have the item tested by an expert and that, if it had been tested, the results of such test would have been sufficient to undermine the numerous other items of evidence presented against him resulting in a different verdict.

As to his second ineffective assistance claim, Washington merely asserts, without any affidavit support, that Reggie Brown would have testified at trial that he saw petitioner between the hours of 11 pm and 12 am on the date of the murders, contrary to the testimony of State witness, Otis Brown, who testified that he saw Washington coming out of the driveway of his wife's residence during that time.  The Fifth Circuit has held, however, that, in order to establish that counsel was ineffective due to a failure to investigate the case or to discover and present evidence, the petitioner must do more than merely allege a failure to investigate – he must state *with specificity* what the investigation would have revealed, what *specific evidence* would have been disclosed, and how the evidence would have altered the outcome of the proceedings.  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994)(Emphasis added); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *Lockhart v. McCotter*, 782 F.2d 1275, 1282-83 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir. 1985).  Considering that Washington's counsel presented several other alibi witnesses on his behalf at trial, the undersigned cannot find, without any evidence as to what specific testimony Reggie Brown would have provided, that there is a "reasonable probability" that, if Brown's alibi testimony would have been presented, the result of Washington's trial would have been different.  Furthermore, without concrete evidence describing the potential testimony of Reggie Brown, the Court does not know whether his counsel made a strategic decision not to speak to that witness or to call him at trial.  *See, Rose v. Johnson*, 141 F.Supp.2d 661, 692 (S.D. Tex 2001), citing *Beavers v. Balkcom*, 636 F.2d 114, 116 (5th Cir. 1981)(An attorney's proper tactical choice not to conduct an investigation should not be confused with a breach of the duty to investigate . . . In proving ineffective assistance of counsel, the petitioner must demonstrate that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense . . . The petitioner may not simply allege, but must "affirmatively prove," prejudice).

*See also, Moore v. Quarterman*, 534 F.3d 454 (5th Cir. 2008)(The petitioner contended that he received ineffective assistance of counsel because his trial counsel failed to investigate adequately the facts surrounding the shooting.  He claimed that his lawyer should have questioned several witnesses, and had counsel done so, he could have presented more effectively the petitioner's claim that he shot the victims in self-defense or, alternately, out of sudden passion.  The Fifth Circuit held that the petitioner "undebatably" failed to carry his burden of proving ineffective assistance of counsel because he failed to provide any evidence regarding the thought process underlying his trial counsel's decisionmaking.  The court of appeals noted that the petitioner made no effort to inquire of his attorney as to what steps were taken to investigate the shooting, so the court did not know whether the counsel made a strategic decision not to speak with those witnesses or what might have been the basis of that decision.  The Fifth Circuit found "crucial" the fact that it did not know what petitioner had told his lawyer as well as the information about which the proposed witnesses would have testified.  The petitioner vaguely argued that the witnesses would have testified to "something favorable," but the court did not know what.  The court found that the petitioner's "complete failure to present *any* evidence strongly argue[d] against [his ] claims that his trial counsel's decisions were not objectively reasonable or that he was prejudiced"); *Anderson,* at 1221 (5th Cir. 1994)("Anderson again makes only brief and conclusory allegations that [his lawyer's] representation was deficient because of his failure to investigate and develop useful evidence.  Typically,

of proving that the Commissioner's decision concerning such claims is contrary to or an unreasonable application of the standard set forth in *Strickland*.  Furthermore, this Court finds that the Commissioner's application of the *Strickland* standard to the facts and evidence in this case was objectively reasonable and proper, and as a result, Washington's ineffective assistance of counsel claims should also be dismissed.

### **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by petitioner, Edward Washington, should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, April 22, 2010.

_____
 **MAGISTRATE JUDGE CHRISTINE NOLAND**

---

he does not specify what this investigation would have divulged or why it would have been likely to make any difference in his trial or sentencing . . . [W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply [*Strickland*'s] standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance'").

21